**JEFFBOAT, INCORPORATED,**
Appellant (Petitioner),

v.

**REVIEW BOARD OF the INDIANA EM-PLOYMENT SECURITY DIVISION**
and Rex D. Wolfe, Appellee (Respondent).

No. 2–783A260.

Court of Appeals of Indiana,
Second District.

June 20, 1984.

Norman L. Roelke, Jeffersonville, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Petitioner-appellant Jeffboat, Inc. (Jeffboat) seeks reversal of a decision by the Review Board of the Indiana Employment Security Division (Board) granting Rex D. Wolfe (Wolfe) unemployment compensation benefits because of a determination that absences due to illness may not be used to discharge an employee for just cause, despite the fact that the absences also violate a company plan dealing with absenteeism.

We reverse and remand.

## FACTS

The facts most favorable to the decision indicate that Wolfe was discharged from his employment as a welder with Jeffboat on November 24, 1981. Wolfe's discharge was based on violation of a labor-management agreement entitled Jeffboat Absentee Control Program (the Program). The Program allows an employee up to nine days of unverified personal absence per contract year without consequence. On the tenth through twelfth days of absence, a repri-mand and suspension procedure is instituted, and the thirteenth day of absence results in discharge. In defining a day of absence, the Program states that two "Out-of-Gate Passes", issued for leaving work early, are the equivalent of one day of absence. Finally, an employee's reason for absence is generally irrelevant under the Program; however, when an employee can verify an illness causing absence for three or more consecutive days, the absence becomes an "Illness Leave" and does not count toward the thirteen-day personal absence limitation. *Record* at 23–24.

Wolfe's absence record, from May to November, 1981, shows he was reprimanded, suspended, and ultimately discharged after being absent thirteen days. The thirteen days included eight days of absence (six for illness) and ten "Out-of-Gate Passes" (the equivalent of five absences). Not included within the thirteen absences were three weeks of illness falling within the "Illness Leave" standards and one week of vacation. *Record* at 17.

A Deputy Referee found Wolfe ineligible for unemployment compensation, concluding that he was discharged for just cause in accordance with a reasonable and uniformly enforced company policy dealing with absenteeism. The Appeals Referee and the Review Board disagreed, finding that Wolfe had shown good cause for his final days of absence due to illness; therefore, he was not discharged for just cause.

## ISSUE

One question is dispositive of this case: Does unemployment compensation legislation allow an employee to be discharged for just cause, and therefore be ineligible for unemployment compensation benefits, because of a knowing violation of a reasonable and uniformly enforced rule of an employer dealing with absenteeism, even though some of the absences may be justified by illness?

## DECISION

PARTIES' CONTENTIONS—Jeffboat maintains that Wolfe is not eligible for

unemployment compensation benefits because it properly discharged him for a knowing violation of a reasonable and uniformly enforced rule dealing with absenteeism. Wolfe responds that any absence justified by illness may not be used to discharge him for just cause and so he is eligible for unemployment compensation benefits.

CONCLUSION—Wolfe could be discharged for just cause because of a knowing violation of a reasonable and uniformly enforced rule of an employer dealing with absenteeism, even though some of the absences may be justified by illness.

Resolution of this case requires us to interpret certain provisions of Indiana's unemployment compensation law:

> "(b) With respect to benefit periods, established on and after July 6, 1980, *an individual who* has voluntarily left his employment without good cause in connection with the work or who *was discharged from his employment for just cause is ineligible for waiting period or benefit rights* for the week in which the disqualifying separation occurred and until he has earned remuneration in employment equal to or exceeding the weekly benefit amount of his claim in each of eight (8) weeks....
>
> ....
>
> (e) *'Discharge for just cause' as used in this section is defined to include but not be limited to:*
> (1) separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge;
> (2) *knowing violation of a reasonable and uniformly enforced rule of an employer;*
> (3) *unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness;*
> (4) damaging the employer's property through wilful negligence;
> (5) refusing to obey instructions;
> (6) reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours;
> (7) conduct endangering safety of self or co-workers; *or*
> (8) incarceration in jail following conviction of a misdemeanor or felony by court of competent jurisdiction or for any breach of duty in connection with work which is reasonably owed an employer by an employee."

Ind.Code 22–4–15–1 (1982) (emphasis supplied).

█ Appellate courts seemingly never stop repeating the admonition that statutory words, phrases, and punctuation should be given their plain, ordinary, and usual meaning by construing the statute as a whole. When the language used in the statute is clear and unambiguous and the intent of the legislature is unmistakable, we must adopt the meaning plainly expressed. *Murphy v. State*, (1980) Ind.App., 414 N.E.2d 322; *Brighton v. Schoffstall*, (1980) Ind.App., 401 N.E.2d 84.

█ Applying these rules to a structurally identical statute, Judge Sullivan resolved that

> "[t]he definition of an 'included offense' contained in I.C. 35–41–1–2 comprises a complete sentence and consists of an introductory phrase and three subdivisions. An 'or' follows the penultimate item. The *Drafting Manual for the Indiana General Assembly* [*Drafting Manual*] (1976), states this to be the preferred structure for Indiana statutes. An 'or' is used to designate when a series is to be read in the disjunctive. The word 'disjunctive' is defined as, 'Designating a conjunction ... which denotes an alternative, contrast, or opposition between the ideas it connects.' Reference to other definitions set forth in I.C. 35–41–1–2 (*compare* 'Governmental entity' and 'Law-enforcement officer',) in light of the drafting guidelines contained in the *Drafting Manual* and the use by the legislature of the disjunctive conjunction 'or', conclusively establishes that the three subdivisions present alternative definitions for an 'included offense'."

*Murphy, supra,* at 324–25 (footnote and citations omitted). *See also* 1A C.D. SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 21.-14, at 90 (1972). Likewise, the eight subdivisions of IC 22–4–15–1(e) set out above present *alternative* definitions for "just cause". Thus, it is reasonable to conclude that Wolfe *can* be discharged for "just cause" because he knowingly violated a reasonable and uniformly enforced rule of an employer dealing with absenteeism, despite the existence of "good cause", or illness, for some of the unsatisfactory attendance.

■ To justify the refusal to pay unemployment compensation benefits under IC 22–4–15–1, Jeffboat had the initial burden of showing that Wolfe was discharged for just cause. Then, Wolfe had the burden of rebutting Jeffboat's case. *Tauteris v. Review Bd. of the Ind. Employment Sec. Div.,* (1980) Ind.App., 409 N.E.2d 1192; *Graham v. Review Bd. of the Ind. Employment Sec. Div.,* (1979) 179 Ind.App. 497, 386 N.E.2d 699. At the hearing, Jeffboat introduced a copy of the Program (which was negotiated with the union) and established Wolfe's violation of the Program's absenteeism provisions. *Record* at 14–17. Wolfe acknowledged existence of the Program, *record* at 16, but claimed it was unfair to be discharged for absenteeism partially caused by illness. *Record* at 22, 25. Having decided that absences partially caused by illness may lead to discharge for just cause so long as they are incorporated into a reasonable and uniformly enforced plan, we need only address whether the Program was reasonable and whether it was knowingly violated and uniformly enforced.

■ We cannot say a plan is unreasonable per se simply because it allows some absences caused by illness to be accumulated toward the thirteen-day benchmark at which an employee has been excessively absent and will be discharged. Thus, we reject the broad dictum of *Love v. Heritage House,* (1983) Ind.App., 463 N.E.2d 478, 482, that "[a] rule which subjects an employee to discharge for excused, as well as

unexcused absences, is unreasonable under I.C. 22–4–15–1(e)(2)."

■ Jeffboat's Program is reasonable because it protects the interests of the employer by providing protection from an employee who abuses the Program, *e.g.,* one who is consistently "ill" one day a week (sometimes referred to as a malingerer). Further, the Program protects the employee's interests by disregarding legitimate long-term illnesses of three or more consecutive days. This is in sharp contrast to the company rule to which Love was subjected, a rule that simply provided that more than six days of absence in a six-month period, regardless of the reason, leads to termination. *Love, supra,* at 480.

Finally, the elements of a knowing violation and uniform enforcement were established by Wolfe's acknowledgment of the Program's existence, *record* at 16, and Jeffboat's offer, without dispute, that it complied with the Program's procedures, *record* at 14–17, and that the Program was uniformly enforced. *Record* at 14. Hence, the Deputy Referee correctly determined that Wolfe was not eligible for unemployment compensation benefits because he was discharged for just cause in accordance with a reasonable and uniformly enforced company plan dealing with absenteeism. *See American Steel Foundaries v. Review Bd. of the Ind. Employment Sec. Div.,* (1968) 143 Ind.App. 12, 237 N.E.2d 263.

■ In his Appellee's brief, Wolfe submits a new rationale (not offered at the hearing) for his award of unemployment compensation benefits based on another segment of IC 22–4–15–1:

"(d) The disqualifications provided in this section shall be subject to the following modifications:

. . . .

(2) An individual whose unemployment is the result of medically substantiated physical disability and who is involuntarily unemployed after having made reasonable efforts to maintain the employment relationship shall not be subject to dis-

qualification under this section for such separation."

We have clearly outlined the prerequisites for relief under this provision and one of those prerequisites is that

"the substantiation of disorder required by the statute must be made to the employer, since the statute compels the claimant to make 'reasonable efforts to maintain the employment relationship', a requirement which presupposes the employer will be aware of the existence of a medical problem and of the physical limitations arising from such disorder."

*Raham v. Review Bd. of the Ind. Employment Sec. Div.*, (1980) Ind.App., 405 N.E.2d 606, 607.

■ Wolfe provided Jeffboat with a doctor's statement verifying that he was ill during the final two days of absence resulting in his discharge, *record* at 18, and stated at the hearing that "I went to my doctor the very next day and he told me I had a serious problem with my lungs, he told me I needed to get out of welding." *Record* at 21. However, even if he suffered from a "physical disability", Wolfe offered no evidence of discussions *with Jeffboat* concerning his recurring illnesses or the need to "get out of welding". Without the required reasonable effort to maintain the employment relationship, Wolfe is not entitled to unemployment benefits under his alternative rationale. *See Goldman v. Review Bd. of the Ind. Employment Sec. Div.*, (1982) Ind.App., 440 N.E.2d 734; *Huber v. Review Bd. of the Ind. Employment Sec. Div.*, (1981) Ind.App., 422 N.E.2d 1257.

Reversed and remanded for further proceedings consistent herewith.

SHIELDS, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

I respectfully dissent.

The majority casually dismisses the rationale of *Love v. Heritage House Convalescent Center* (2d Dist. decided January 24, 1983, ordered published upon Court's own motion May 24, 1984) Ind.App., 463 N.E.2d 478. Even a superficial examination of *Love* discloses that the employer there, as here, based its termination of the employee upon a written rule.

The decision of the Review Board appealed from in *Love* was, insofar as pertinent, as follows:

"On April 6, 1981 the claimant was discharged from her employment because [in violation of the rule] she incurred more than six absences in a six-month period (regardless of the reason for the absences) and because she incurred more than ten tardies in a twelve-month period.

CONCLUSIONS: An individual who is discharged for just cause is ineligible for benefit rights as provided in Chapter 15-1 of the Indiana Employment Act. The term 'discharged for just cause' is defined by the Act to include unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness and knowing violation of a reasonable and uniformly enforced rule of an employer.

In this case, the employer's rule regarding attendance subjects an employee to discharge regardless of the reason for the absences. An employer's rule which subjects an employee to discharge for absences without regard to the reason for those absences is not a 'reasonable rule' for purposes of disqualification from unemployment benefits under Chapter 15-1. In this case, although the claimant may have violated the rule of the employer regarding attendance, the employer's rule regarding attendance is not a reasonable one under Chapter 15-1 of the Act. As a result, the referee concludes that the claimant did not knowingly violate a reasonable and uniformly enforced rule of the employer."

In resolving the central issue before us upon appeal, i.e., whether the employee was discharged for just cause, we were required to consider and determine whether the rule in question was a reasonable rule

**382**

and whether Love's discharge pursuant to the rule was for just cause. Our statement that "[a] rule which subjects an employee to discharge for excused, as well as unexcused absences, is unreasonable under I.C. 22–4–15–1(e)(2)" was therefore essential to the determination made in the *Love* case.

The majority opinion here acknowledges that the quoted statement in *Love* was essential to our determination in that case because an attempt is made to distinguish the employer's rule in *Love* from the rule in *Jeffboat, Inc.* as here considered. The fact remains that both cases involve, as an essential factor to the determinations, an employer's rule which punishes absences without regard to whether those absences are with or without good cause. If the majority wishes to disavow *Love* it should do so forthrightly.

I fully agree with the majority that Jeffboat's absentee policy rule is enlightened and is liberally weighted in favor of the average employee. Many absences, latenesses, etc. are permitted before sanctions or discharge is permitted. It is an eminently fair policy in terms of the right of an employer to maintain an adequately staffed place of work. The rule is not unfair to an employee who seeks to retain that employment despite frequent absences which adversely affect the employer's business. The employee has no right to continued employment under such circumstances.

The fact remains, however, that the rule is not a sufficient basis upon which to deny unemployment benefits to an employee terminated through no fault of his own.