Carolyn A. BEENE, Appellant
(Claimant),

v.

REVIEW BOARD OF the INDIANA DEPARTMENT OF EMPLOYMENT AND TRAINING SERVICES, John C. Mowrer, Joe A. Harris and Nanette L. McDermott, as members of and as constituting the Review Board of the Indiana Department of Employment and Training Services, and Heritage Cablevision (Employer), Appellees.

No. 93A02–8710–EX–00435.

Court of Appeals of Indiana,
Second District.

Sept. 28, 1988.

---

Angelika E. Mueller, Legal Services Program of Northern Indiana, Inc., South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Donald B. Kite, Sr., Deputy Atty. Gen., Indianapolis, for appellees.

BUCHANAN, Judge.

## CASE SUMMARY

This appeal arises from a decision of the Review Board of the Indiana Department of Employment and Training Services (Review Board) finding appellant-claimant Carolyn A. Beene (Beene) ineligible for unemployment compensation benefits after she was discharged for violating her employer's attendance policy.

We affirm.

## FACTS

Beene was employed at Heritage Cablevision (Employer) from July 25, 1983 through March 26, 1987 as a customer service representative. An attendance policy went into effect on September 1, 1983. Beene was aware of this policy, which provided that employees who violated the attendance policy would be subjected to various steps of discipline, with a greater "punishment" as the number of violations increased. The first violation would result in a verbal warning, the second in a written warning, the third would subject the employee to a three-day suspension without pay, and the fourth violation resulted in the discharge of the employee.

In order to determine violations, the attendance policy set forth three classifications of absences, i.e., *exempt, counted,* or *unexcused. Exempt absences* were those required for court appearance or military leave, and were not counted for any purpose under the policy and were not subject to discipline. *Counted absences* included those for personal illness, child care problems, illness of spouses or other family members, and transportation associated problems. While counted absences were sometimes referred to as "excused" by the Employer, they were nonetheless noted, and would subject the employee to the four steps of discipline. *Unexcused absences* subjected the employee to immediate discipline at the second level (written warning). Thus, both counted and unexcused absences could result in discipline under the policy.

The general policy toward counting the absences was that if the employee had two or more counted absences in any thirty-day period or five or more in any ninety-day period, the employee would be subject to discipline. Two instances of tardiness or "early quit" were counted as one absence.

Finally, the attendance policy provided that the employee could be moved back one step in the disciplinal progression for each six-month period with no discipline. The program also offered some latitude for verified cases of long-term illness or extreme emergencies.

Beene was discharged after she had accumulated six counted absences and seven incidents of tardiness in a six-month period, and had progressed through the four levels of discipline. The evidence before the appeals referee revealed that the counted absences were caused by the illness of Beene's children or Beene herself. Six instances of tardiness were explained as two occurrences of car problems, three instances in which her children became sick before she went to work, and one occasion when she had to take her husband to the emergency room. On the days Beene was tardy, she arrived at work not more than fifteen minutes late.

Beene was found ineligible for unemployment compensation on April 23, 1987, because she was discharged for just cause for poor attendance. After a hearing by the appeals referee, the decision of the claims deputy that Beene was discharged for just cause was affirmed. On August 27, 1987, the Review Board affirmed the decision of the appeals referee, and adopted its findings of fact and conclusions of law which read in pertinent part:

"FINDINGS OF FACT: The Referee finds the following: The claimant worked for the subject employer for a period from July 25, 1983, through March 26,

1987, as a customer service representative. Her rate of pay at the time of separation was $6.76 per hour. The claimant was discharged on March 26, 1987.

*The claimant was discharged in accordance with a uniformly enforced attendance policy of the employer.* The claimant was well aware of that policy, had been given a verbal warning, written warning, and a three day suspension prior to her actual termination. Some of the claimant's reasons for tardiness and absence were for sickness or the sickness of her children, and were considered excused by the employer, however, there were others that were the result of car problems and various other reasons which, all taken into consideration, counted as occurrences in accordance with the employer's policy. While the employer's policy might at first glance appear to be somewhat harsh, nonetheless, upon reviewing the policy it appears to clearly be fair in that an employee could have disciplinary steps removed for periods of a clear record without discipline. The claimant's attendance record continued to worsen rather than improve during the period of the disciplinary action taken by the employer. As a result the claimant was discharged effective March 26, 1987.

CONCLUSION: From the foregoing findings it must be concluded from the best evidence available that the claimant was, in fact, discharged for just cause within the meaning and intent of Chapter 15, Section 1, of the Act."

*Record* at 58 (emphasis supplied).

### ISSUES

Beene raises three issues; the following two issues, as restated, are dispositive:

1. Were the Review Board's findings of fact supported by sufficient evidence?

2. Was the Employer's attendance policy a "reasonable rule," the violation of which supported the discharge of Beene and the denial of unemployment compensation benefits?

### DECISION

ISSUE ONE—Were the Review Board's findings of fact supported by sufficient evidence?

PARTIES' CONTENTIONS—Beene argues that the findings made by the Review Board regarding her absences, her worsening attendance record, and the reasonableness of the Employer's attendance policy were unsupported by the evidence and therefore contrary to law.

The Employer replies that the three findings were supported by sufficient evidence.

CONCLUSION—The Review Board's findings of fact were supported by sufficient evidence.

When faced with a challenge that findings are unsupported by the evidence, we consider the evidence and reasonable inferences therefrom in a light most favorable to the Review Board's decision. *Love v. Heritage House Convalescent Center* (1983), Ind.App., 463 N.E.2d 478. We will disturb the decision only if reasonable persons would reach a different conclusion based on the evidence in the record. *Id.*

Beene first attacks the Board's finding that "[s]ome of the claimant's reasons for tardiness and absence were for sickness or the sickness of her children, and were considered excused by the employer, however, there were others that were the result of car problems and various other reasons which, all taken into consideration, counted as occurrences in accordance with the Employer's policy." *Record* at 58. Although Beene contends that this finding implies that some of her absences or incidents of tardiness were unexcused and that only the unexcused absences were counted under the policy, we cannot conclude that the finding was unsupported or erroneous. The evidence showed that Beene was absent due to personal illness or the illness of her children and that incidents of tardiness were caused by car problems and various occurrences which all fell within the category of counted absences under the Employer's policy, even though considered "excused" by the Employer. The confu-

sion apparently stems from the categorization under the attendance policy of certain occurrences as "counted" even though they were considered "excused" by the Employer. However ambiguous those labels might appear, it is clear from other language used in the policy that the Employer considered (whether labeled excused or counted) absences due to illness, car trouble, child care or the like as subject to discipline. It also appears that the Employer referred to these counted absences as "excused" to differentiate them from "unexcused" absences, which would automatically count under the attendance policy and subject the employee to harsher discipline. Although the hearing officer's finding might have better clarified this distinction, the finding was not incorrect or unsupported by the evidence.

The finding that Beene's attendance record worsened rather than improved during the period of disciplinary action was also supported by the evidence. Beene urges a quantitative examination of her attendance record to support her argument. However, the finding that her record "worsened" does not necessarily mean that Beene was absent more days than before, but could be construed to mean that she continued to be absent and tardy even after she was disciplined and warned of the consequences of the failure to improve her attendance record.

Whether the Employer's attendance policy was a reasonable rule is more appropriately labeled a conclusion of law and addressed below.

ISSUE TWO—Was the Employer's attendance policy a "reasonable rule," the violation of which supported the discharge of Beene and the denial of unemployment compensation benefits?

PARTIES' CONTENTIONS—Beene's argument is that the Employer's attendance policy was not a reasonable rule because the plan resulted in her discharge for occurrences which were considered excused by the Employer and which were beyond Beene's control. Beene contends that in the absence of a reasonable rule there is no

just cause for her discharge under Ind. Code 22–4–15–1(d) (Supp.1987).

The Review Board responds by pointing to various provisions of the policy which protected the employees and made the plan reasonable. The Review Board adds that the evidence showed a knowing violation of a reasonable and uniformly enforced rule as provided in IC 22–4–15–1(d)(2).

CONCLUSION—As a matter of law, the Employer's attendance policy was a reasonable and uniformly enforced rule, the violation of which supported Beene's discharge and the denial of unemployment compensation benefits.

■ Under IC 22–4–15–1(a), an employee who is discharged from his employment for just cause is ineligible for unemployment compensation benefits for a certain amount of time and until certain conditions are met. "Discharge for just cause" includes a "knowing violation of a reasonable and uniformly enforced rule of an employer." IC 22–4–15–1(d)(2).

In *Love, supra,* the employer had a policy which provided that a total of six days of absence in a six-month period would cause a counselling report to be completed; following such report any additional absences would be cause for the employee's termination, regardless of the reason for the absence. We concluded this rule was unreasonable as it subjected the employee to discharge for excused as well as unexcused absences. *Id.* Following on the heels of *Love* was *Jeffboat, Inc. v. Review Bd. of the Ind. Employment Sec. Div.* (1984), Ind.App., 464 N.E.2d 377 (Sullivan, J., dissenting). In *Jeffboat,* this court qualified the broad statement in *Love,* reasoning that "[w]e cannot say a plan is unreasonable per se simply because it allows some absences caused by illness to be accumulated toward the thirteen-day benchmark at which an employee has been excessively absent and will be discharged." *Jeffboat, supra,* at 380. Jeffboat's attendance policy was reasonable, despite the fact that some of the employee's absences for illness were counted against him, because it protected employers from malingerers and guarded employees from discharge by

not counting relatively long-term verified illnesses toward a thirteen-day benchmark set by the policy. *Id.*

In this case, as in *Jeffboat,* the Employer's "no-fault"[1] attendance policy protected the Employer's interest in the efficient running of its business by preventing against the practice of certain employees of being frequently "ill." The policy in turn safeguarded employees by providing some leeway for cases of long-term illness, *record* at 28, 38, and by allowing verified instances of real emergencies to be considered on their merits and possibly exempt from discipline. *Record* at 26. The program clearly delineated which absences would be exempt, counted, or unexcused and gave the employee three warnings before discharge would occur. Additionally, the policy provided a provision by which the employee could move back one step in the discipline progression for each discipline-free six-month period.

Beene had been given a verbal warning, written warning, and a three-day suspension; she was aware of the attendance policy and informed after each violation of the consequences of her absences. The attendance policy was also adhered to by all departments, *record* at 23, and each employee was aware of the policy. *Record* at 24. Thus, the Employer established a prima facie case of discharge for the violation of a reasonable and uniformly enforced rule, which was not sufficiently rebutted by Beene.

The fact that Beene's absences and tardiness were allegedly caused from occurrences "beyond her control" is not the litmus test in Indiana. Our unemployment compensation statute provides that discharge for the violation of a reasonable and uniformly enforced rule demonstrates just cause for discharge and subsequent denial of benefits. As long as the Employer puts forth a prima facie case for discharge under IC 22–4–15–1(d)(2), insufficiently rebutted by the employee, the employee's discharge and denial of benefits can be upheld. *See Jeffboat, supra.* We recognize that this result might be somewhat at odds with decisions of other states whose statutes rely on a finding of "misconduct" or "willful misconduct" rather than "just cause" to deny unemployment compensation.[2] The result follows in those states that proof sufficient to justify discharge is not necessarily sufficient to support a finding of willful misconduct to justify the denial of unemployment benefits. *See, e.g., Cosper v. Iowa Dep't of Job Serv.* (1982), Iowa, 321 N.W.2d 6; *St. Williams Nursing Home v. Koep* (1985), Minn.App., 369 N.W.2d 33; *Scevers v. Employment Div.* (1976), 26 Or.App. 659, 554 P.2d 575; *Atlantic Richfield Co. v. Commonwealth, Unemployment Compensation Bd. of Review* (1982), 65 Pa.Commw. 65, 441 A.2d 516; *Green, supra; see also* Annot., 58 *A.L.R.3d* 674 (1974 & Supp.1988). However, Indiana's statute is authoritative, and its result equitable in light of the competing interests of both employee and employer.

Beene's final argument is that under IC 22–4–15–1(d)(3), she had "good cause" for her absences and tardiness. The above conclusion that Beene could be discharged and denied benefits for violating the Employer's uniformly enforced, reasonable attendance policy obviates the need to determine whether there was good cause for her poor attendance under IC 22–4–15–1(d)(3) as that statute lists several disjunctive definitions of just cause, any one of which would support the discharge and denial of benefits. *See Jeffboat, supra.*

The Review Board's determination that Beene was discharged for just cause is affirmed.

SHIELDS, P.J., and STATON, J., concur.

1. *See Green v. Commonwealth, Unemployment Compensation Bd. of Review* (1981), 61 Pa. Commw. 231, 433 A.2d 587 (court referred to policy whereby Employer counted all absences other than few exceptions as a "no-fault" policy).

2. *See, e.g., Iowa Code Ann.* § 96.5(2)(1984); *Minn.Stat.Ann.* § 268.09(1)(b) (West 1988); *Or. Rev.Stat.* § 657.176(2)(a)(1987); 43 *Pa.Cons. Stat.Ann.* § 802(e)(Purdon 1964).