**STANRAIL CORPORATION,
Appellant–Respondent,**

v.

**UNEMPLOYMENT INSURANCE
REVIEW BOARD and Thomas
Pierce, Appellees–Petitioners.**

No. 93A02–9911–EX–765.

Court of Appeals of Indiana.

Sept. 14, 2000.

Patrick B. Mceuen, Singleton Crist Austgen & Sears, Munster, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

Thomas Pierce, Gary, Indiana, Appellee Pro Se.

**OPINION**

FRIEDLANDER, Judge

Thomas Pierce's employment was terminated by Stanrail Corporation and he thereafter applied for unemployment benefits. An intake examiner and later an administrative law judge (ALJ) determined that Pierce was terminated for just cause, and he was thereby denied unemployment benefits. Pierce appealed to the Unemployment Insurance Review Board (the Board), which reversed the ALJ and held that Pierce was not terminated for just cause, and he therefore was entitled to unemployment benefits. We address the following issue, which is dispositive of the appeal:

Did the Board err in concluding that Pierce was not terminated for just cause?

We reverse.

Pierce was an employee at Stanrail. Stanrail's attendance program was published in a handbook and distributed to all employees. Following is a brief description of relevant components of that policy. On a yearly basis, each employee was entitled to (1) five sick days, (2) two personal business days, (3) two three-day (at a minimum) illness leaves, and (4) accrued vacation days. The program rewarded perfect attendance with a monthly bonus and penalized absence, tardiness, and misconduct with a system of demerit points, which included the following:

| Infraction | Demerit points |
|---|---|
| Failing to punch time card | 25 |
| Tardy | |
| 0–6 minutes | 10 |
| 7–12 minutes | 20 |
| 13–18 minutes | 40 |
| 19 + minutes | |
| sent home (manager's decision) | 100 |
| stay (manager's decision) | 50 |
| Early quit | |
| 3.5 or more hours | 100 |
| less than 3.5 hours | |
| 1 st and 2 nd early quit | 25 |
| 3 rd early quit | 50 |
| after 3 rd early quit | 100 |
| Unexcused absence | 100 |

| | |
|---|---|
| Absent without reporting | 300 |
| Failure to wear safety glasses | 50 |
| Inappropriate use of forklift | 50 |
| General safety violations | 50 |
| Horseplay | 50 |
| Careless equipment/material damage | 50 |
| Deliberate equipment/material damage | 300 |

---

*Record* at 49–50. With respect to reporting absences, the manual instructed the employees as follows:

> You MUST CALL OFF every day you are absent. (exception: you are on scheduled Vacation, approved Leave of Absence, Workman's Compensation, or Hospitalization your supervisor is aware of) You are to TALK TO A SUPERVISOR [afternoon shift] or LEAVE THE INFORMATION WITH THE GUARD [morning shift]. You are *NOT* to give the information to the Switchboard.

*Record* at 51 (emphasis in original). As reflected above, failure to adhere to the call-in policy subjected an employee to 300 demerit points for being absent without reporting. An employee accumulating more than 500 demerit points was subject to immediate termination.

On January 5, 1999, Pierce missed work, but reported his absence according to the specified procedure. He was assessed 100 demerit points. Pierce was also absent on January 6, but failed to call in. Therefore, he was assessed 300 demerit points. On January 7, Pierce was again absent. On that day, he called to report his absence, but spoke only with someone who worked on the switchboard. He could not later recall the name of the person to whom he had reported. Because he did not adhere to the guidelines for calling in absences, Pierce received 300 demerit points.[1] Pierce was terminated as a result of accumulating more than 500 demerit points after his January 6 and 7 absences.

Pierce applied for unemployment benefits. A deputy determined that Pierce was terminated for just cause. That decision was appealed to an ALJ, who affirmed the denial of benefits. The ALJ entered the following conclusions in support of the decision:

> From the foregoing findings, it is concluded that the claimant was discharged from his employment with this employer. It is concluded that the claimant was discharged for a violation of the employer's demerit program concerning attendance. It is concluded that the attendance program is enforced with all employees on a uniform basis. According to I.C. 22–4–15–1(d)(2) a discharge for just cause is defined to include but not to be limited to a knowing violation by an employee of a reasonable and uniformly enforced rule of the employer concerning attendance. Therefore, it is concluded that the claimant was discharged for just cause within the meaning and intent of I.C. 22–4–15–1.

*Record* at 6. Pierce appealed the ALJ's decision to the Board. The Board reversed, entering the following conclusions:

> In a discharge case, the Employer bears the burden of proving that it discharged the Claimant for just cause as that term is defined in Indiana Code § 22–4–15–1(d). *Russell v. Review Board,* 58[6] N.E.2d 942 (Ind.Ct.App.1992). In *Barnett v. Review Board,* 419 N.E.2d 249 (Ind.Ct.App.1981), the Court held that the Review Board must make certain specific findings in cases involving a discharge for violating an employer's rules. To find that a discharge was for just cause, there must first be a finding that: (1) there was a rule; (2) the rule was

---

1. It appears that on January 8, Pierce was again absent without reporting, for which he would have received another 300 demerit points. This absence apparently was not a factor in the proceedings before the deputy, the ALJ, and the Board, because Pierce was terminated for having accumulated 600 points as a result of being absent without calling in on January 6 and 7.

reasonable; (3) the rule was uniformly enforced; (4) the claimant knew of the rule; and (5) the claimant knowingly violated the rule. A reasonable attendance policy would allow exemptions for long-term absences for illness and verified emergencies as well as provide for progressive discipline prior to discharge. *Beene v. Review Board,* 528 N.E.2d 842 (Ind.Ct.App.1988).

This policy is unreasonable. Except for the two personal days a year and three days or more of absence with a doctor's slip, there were no unexcused absences under the policy. Court appearances of any kind are listed as "non-excused" absence. This unexcused absence category would apparently include jury duty which is a legally protected obligation. These deficiencies render the policy unreasonable.

*Record* at 9. Stanrail appeals the decision of the Board.[2]

■■■ Our task when reviewing a decision by the Board is to determine whether the decision is reasonable in light of its findings. *Kentucky Truck Sales, Inc. v. Review Bd. of Indiana Dep't of Workforce Dev.,* 725 N.E.2d 523 (Ind.Ct.App.2000). Generally, the Board's findings of fact are conclusive and binding upon this court. Accordingly, we neither reweigh evidence nor assess witness credibility. *Browning–Ferris Indus. v. Review Bd. of Indiana Dep't of Workforce Dev.,* 693 N.E.2d 1351 (Ind.Ct.App.1998). We are not, however, bound by the Board's interpretation of the relevant law. Rather, we determine de novo whether the Board correctly interpreted and applied the law. *Kentucky Truck Sales, Inc. v. Review Bd. of Indiana Dep't of Workforce Dev.,* 725 N.E.2d 523.

■■■ Stanrail contends that because it terminated Pierce's employment for just cause, he is not entitled to unemployment insurance benefits. Ind.Code Ann. § 22–4–15–1(d)(2) (West Supp.1999) provides that an employer has just cause to terminate an employee for the "knowing violation of a reasonable and uniformly en-

forced rule of an employer." Initially, the employer bears the burden of establishing that an employee has been terminated for just cause. *Browning–Ferris Indus. v. Review Bd. of Indiana Dep't of Workforce Dev.,* 693 N.E.2d 1351. "In order to make out a prima facie case of termination for just cause under IC 22–4–15–1(d)(2), the employer must show that the former employee: (1) knowingly violated; (2) a reasonable; and (3) uniformly enforced rule." *Id.* at 1353.

Stanrail presented undisputed evidence that Pierce did not report to work on January 6 and did not call. It also presented undisputed evidence that Pierce did not show up for work on January 7, and did not call and inform his supervisor that he would be absent that day. Pierce does not dispute Stanrail's assertion that Pierce knew of the Stanrail policy that required him to communicate directly with his supervisor to inform the supervisor that Pierce would not be at work on January 7. Similarly, Pierce does not dispute the reasonableness of the rule requiring that he report absences directly to his supervisor. Finally, Pierce does not dispute that the rule was uniformly enforced.

Notwithstanding the fact that Stanrail's evidence seemingly established the elements necessary to prove termination for just cause, the Board reversed the ALJ and ruled in favor of Pierce. In so doing, the Board did not disturb the deputy's and ALJ's findings that Stanrail had established the elements of termination for just cause. Rather, the Board broadened the scope of its inquiry beyond the rule upon which Pierce's termination was based. After conducting this broadened examination, the Board concluded that Stanrail's employment policies were deficient in other respects not pertinent to the basis of Pierce's termination, and that these deficiencies rendered the entire policy unreasonable.

The parties invite this court to take this opportunity to resolve a seeming conflict

**2.** Oral argument was held before this court in Indianapolis, Indiana on August 1, 2000.

highlighted by the Board's decision. According to the parties, both *Jeffboat, Inc. v. Review Bd. Of Ind. Employment Sec. Div.*, 464 N.E.2d 377 (Ind.Ct.App.1984) and *Love v. Heritage House Convalescent Ctr.*, 463 N.E.2d 478 (Ind.Ct.App.1983) are precedent for resolving this appeal, but each compels a different result. Even assuming the parties are correct with respect to the conflicting nature of the holdings in *Jeffboat* and *Love*, we must decline the invitation to resolve the conflict. We hold that the Board erred in broadening its inquiry beyond the specific rule that was cited as the basis for Pierce's termination. Applying that principle in the instant case, in order to resolve this appeal, we need not look beyond the rule requiring Stanrail employees to call and inform their supervisor or the guard shack that they are going to be absent from work that day.

■ IC § 22–4–15–1(d)(2) indicates that a knowing violation of an employer's reasonable and uniformly enforced rule concerning absenteeism may serve as the basis for discharging an employee for just cause, thereby rendering him or her ineligible for unemployment compensation benefits. *Jeffboat, Inc. v. Review Bd. of Indiana Employment Sec. Div.*, 464 N.E.2d 377. If such a rule is cited as the reason for discharge, then the Board must confine its inquiry to that particular rule, and must determine whether, with respect to that rule, the employer has established the elements required to prove termination for just cause just, as set out in IC § 22–4–15–1(d)(2). *Parkison v. James River Corp.*, 659 N.E.2d 690 (Ind.Ct.App.1996). In this case, the Board erred in going beyond the stated reason for discharge and taking the opportunity to review all facets of Stanrail's employment policies. We will therefore determine whether, considering only the rule in question, Stanrail established that Pierce was terminated for just cause.

Pierce does not dispute the following facts: (1) He was absent on January 6 and did not call in, (2) he was absent on January 7 and did not call and speak with his supervisor to inform him that Pierce would not be at work that day; instead, Pierce called and gave the information to someone working at the switchboard, (3) Stanrail's policy required employees such as Pierce, who worked the afternoon shift, to call the employee's supervisor and inform the supervisor directly that the employee would not be at work that day, or else the employee would receive 300 demerit points, (4) a call to the switchboard informing Stanrail's switchboard personnel that the employee would be absent did not comply with (3) above, and would subject the employee to 300 demerit points, (5) Pierce knew of the Stanrail employment rules set out in (3) and (4) above, and (6) the rules set out in (3) and (4) above were uniformly applied.

Based upon the foregoing, we agree with the decisions of the deputy and the ALJ that Pierce was terminated for just cause because he accumulated more than 500 demerit points for failing to report for work on January 6 and 7 of 1999, without calling and informing his supervisor that he would be absent. The judgment of the Board is reversed.

Judgment reversed.

NAJAM, J., concurs.

MATHIAS, J., concurring with separate opinion.

### MATHIAS, Judge, concurring

I concur in this opinion because of the procedural posture of this case and the proper standards of review for both the Board and this Court on appeal.

Counsel ably pointed out the conflict between this Court's previous analyses in *Jeffboat, Inc. v. Review Board*, 464 N.E.2d 377 (Ind.Ct.App.1984), and *Love v. Heritage House*, 463 N.E.2d 478 (Ind.Ct.App. 1983). However, counsel, the Board and this Court have, as of yet, failed to address the source of this recurring, apparent conflict: the merger of "just cause" reviews of I.C. 22–4–15–1(d)(2) rules and I.C. 22–4–

15–1(d)(3) rules. "No fault" discipline policies tend to erase the distinction between these two subsections, which are written in the disjunctive, causing confused results. Until "no fault" absenteeism policies under I.C. 22–4–15–1(d)(3) are reviewed for reasonableness under *Love*, independent of non-absenteeism rules under I.C. 22–4–15–1–(d)(2), the artificial conflict between the *Jeffboat* and *Love* results will persist.