Lisa M. BECKINGHAM, Appellant–
Petitioner,

v.

REVIEW BOARD OF the INDIANA
DEPARTMENT OF WORKFORCE
DEVELOPMENT and Cenveo Corpo-
ration, Appellees–Respondents.

No. 93A02–0808–EX–771.

Court of Appeals of Indiana.

March 20, 2009.

Transfer Granted July 2, 2009.

**478**

Karen L. Withers, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee Review Board.

## OPINION

HOFFMAN, Senior Judge.

Plaintiff–Appellant Lisa M. Beckingham appeals the decision of the Unemployment Insurance Review Board ("the Board") denying her application for unemployment benefits. We affirm.

Beckingham presents two issues for our review, which we restate as:

I. Whether Beckingham was discharged for just cause.

II. Whether Beckingham's discharge should have been reviewed under Ind.Code § 22–4–15–1(d)(3) rather than Ind.Code § 22–4–15–1(d)(2).

Beckingham was employed by Cenveo Corporation from August 14, 1997 to January 30, 2008, when she was discharged for violation of Cenveo's attendance policy. Thereafter, Beckingham filed for unemployment benefits. In April 2008, a claims deputy determined that Beckingham had been terminated for just cause due to her violation of the employer's attendance poli-

cy. Beckingham appealed this decision, and, on June 17, 2008, an Administrative Law Judge ("ALJ") held an evidentiary hearing. Following the hearing, the ALJ entered findings of fact and conclusions of law affirming the decision of the claims deputy, as follows:

*FINDINGS OF FACT:* The ALJ (Administrative Law Judge) finds the claimant worked for this employer from 8/14/97 through 1/30/08 as a purchasing agent at $13.26 per hour. She was discharged for violation of the employer's attendance policy.

The ALJ finds the employer has an excuse-based policy. It provides that termination will occur on the fourth occurrence of unexcused absence in a 12-month period. It also provides that an employee may be terminated for excessive excused absences or tardies within a 12-month period. It states in particular "Disciplinary action for excessive excused absences and tardiness will be taken based upon an employee's total occurrences of absences and tardiness within any consecutive 12-month period. Each excused absence and tardy will constitute a separate occurrence ... 13 occurrences in any 9–12 month period = Termination." Claimant had received the policies on 12/2/03 and 3/22/06. The ALJ finds the policies known to the claimant, reasonable, and uniformly enforced.

The claimant received a written verbal warning on 3/5/07 for three occurrences within 30 days. She had to leave early on February 13th because the babysitter was sick; was ill herself on February 15th; and had no sitter on February 23rd. Claimant received a first written warning on October 5, 2007 for illness of her child on 9/14, for being late due to a flat tire on 9/28; for leaving early for unscheduled personal time on 10/2, and leaving early for a sick child on 10/3.

She had 3½ occurrences in 30 days. On 1/9/08 the claimant received a final written warning for three occurrences within 30 days and 8½ occurrences within 6 months. She was late 8/3/07; ill because of a child on 9/14; late 9/28; left early for unscheduled personal on 10/2/07; left early child sick on 10/3/07; ill because of various illnesses of child on 11/28, 12/4, 12/27, and 1/4/07. On 1/30/08 she was terminated for 14 ½ occurrences.

The claimant asserts the defense firstly, that she is a single mother, and therefore a special exception should be made for her and the policy should not apply to her. Her second defense is that although there is a policy, she feels that the excessive absence for good excuse section should apply rather than the policy section of the act. She further feels that Ms. Foster missed more work than her. Claimant is not a custodian of records and did not subpoena Ms. Foster's attendance records, yet claims her verbal statement that Ms. Foster was absent more than her, should establish lack of uniformity of enforcement.

Employer's response is that they have many single mothers, and they are able to get to work. They did try to work with the claimant, and she should have been terminated at 13 occurrences, but was actually terminated at 14½ occurrences.

*CONCLUSIONS OF LAW:* In defining discharge for just cause, the statute includes the knowing violation of a reasonable and uniformly enforced rule of an employer. IC 22–4–15–1(d)(2)

To find that a discharge was for just cause under this section, it must be found that there was a rule, the rule was reasonable, the rule was uniformly enforced, the claimant knew of the rule, and the claimant knowingly violated the

rule. *Barnett v. Review Board* (1981), Ind.App., 419 N.E.2d 249.

The ALJ concludes the employer has sustained its burden of proof by preponderance of the evidence. The ALJ concludes the policy is known to the claimant, reasonable, and uniformly enforced. The ALJ cannot conclude that claimant's verbal assertion without any substantiation to support establishes any lack of uniformity of enforcement. The ALJ cannot conclude that the employer is required to make special exception for claimant, and their policy should not apply to her because of her "special status as a single mother." The ALJ concludes that Ms. Foster provided competent evidence that she deals with her attendance and childcare issues on her lunch hour rather than on her work time. She felt the claimant could do the same thing. It is held, therefore, the claimant was discharged for just cause under IC 22–4–15–1.

*DECISION:* The determination is **affirmed.** The penalties of IC 22–4–15–1 apply. The claimant's benefit rights are suspended effective week ending 2/2/2008 and remain so suspended until the claimant has earned her weekly benefit amount or greater in each of eight (8) weeks. Maximum benefit amount is reduced by 25%.

Appellant's Appendix at 3–4.

Beckingham subsequently filed an appeal of the ALJ's decision to the Board. The Board examined the case without a hearing and affirmed the ALJ's decision on July 29, 2008. It is from this decision that Beckingham now appeals.

█ The Indiana Unemployment Compensation Act provides that any decision of the Board shall be conclusive and binding as to all questions of fact. Ind.Code § 22–4–17–12(a). When the Board's decision is challenged as contrary to law, the reviewing court considers the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of facts. Ind.Code § 22–4–17–12(f). Accordingly, the reviewing court examines: (1) determinations of specific or basic underlying facts; (2) conclusions or inferences from those facts, or determinations of ultimate facts; and (3) conclusions of law. *NOW Courier, Inc. v. Review Bd. of Indiana Dept. of Workforce Development*, 871 N.E.2d 384, 387 (Ind.Ct.App. 2007).

█ We review the Board's findings of basic fact under a "substantial evidence" standard of review. *Quakenbush v. Review Bd. of Ind. Dept. of Workforce Development*, 891 N.E.2d 1051, 1053 (Ind.Ct. App.2008). In this analysis, we neither reweigh the evidence nor assess the credibility of witnesses, and we consider only the evidence most favorable to the Board's findings. *Id.* Reversal is warranted only if there is no substantial evidence to support the Board's findings. *Id.* Next, we review the reasonableness of the Board's determination of ultimate facts. These facts involve an inference or deduction based upon the Board's findings of basic fact. *McHugh v. Review Bd. of Indiana Dept. of Workforce Development*, 842 N.E.2d 436, 440 (Ind.Ct.App.2006). Finally, conclusions of law are reviewed to determine whether the Board correctly interpreted and applied the law. *Id.*

█ Beckingham contends that the Board improperly determined that Cenveo terminated her for just cause. A claimant is ineligible for unemployment benefits if she is discharged for just cause. Ind.Code § 22–4–15–1(a). The Board determined that Beckingham was discharged for just cause pursuant to Ind.Code § 22–4–15–1(d)(2). Under this subsection of the statute, discharge for just cause is defined as

the "knowing violation of a reasonable and uniformly enforced rule of an employer." Ind.Code § 22–4–15–1(d)(2). The employer bears the initial burden of establishing that an employee has been terminated for just cause. *Owen County ex rel. Owen County Bd. of Com'rs v. Indiana Dept. of Workforce Development*, 861 N.E.2d 1282, 1292 (Ind.Ct.App.2007). To establish a prima facie case for violation of an employer rule under Ind.Code § 22–4–15–1(d)(2), the employer must show that the claimant: (1) knowingly violated; (2) a reasonable; and (3) uniformly enforced rule. *Id.* Once the employer has met its burden, the claimant must present evidence to rebut the employer's prima facie showing. *Id.*

In challenging her discharge for just cause, Beckingham specifically asserts that Cenveo's attendance policy is not reasonable and not uniformly enforced. We will address each contention in turn.

Here, the ALJ admitted into evidence a copy of a portion of Cenveo's employee handbook containing its attendance policy, as well as Beckingham's attendance record and the paperwork showing the progression of discipline. Cenveo's attendance policy classifies absences as either "excused" or "unexcused" and lists the following as "excused" absences:

- Hospital confinement
- Injury on the job
- Jury duty
- Pre-arranged absence authorized in writing, in advance
- Military obligations
- Bereavement leave as authorized by this handbook
- Serious illness or injury of a member of the employee's immediate family
- Personal leave of absence authorized in writing, in advance
- Personal illness or injury
- Approved FMLA absences
- Disaster directly affecting the employee or his/her immediate family (i.e., fire, flood, tornado)
- Child care emergencies or other family emergencies

Cenveo Attendance Policy, Appellant's App. at 43. The policy also provides that employees may incur up to 13 occurrences of excused absences and/or tardies over a 12–month period before being terminated for excessive absenteeism. Cenveo Attendance Policy, Appellant's App. at 46. In addition, Cenveo's policy provides that an excused absence which occurs over consecutive days will be counted as a single occurrence. Cenveo Attendance Policy, Appellant's App. at 46.

Cenveo's attendance records show that Beckingham left early on February 13, 2007 because her babysitter was sick; she was sick on February 15; and she had no babysitter on February 23, 2007. Beckingham received a written/ verbal warning on March 5, 2007 for having 3 occurrences within thirty (30) days. On August 3, 2007, Beckingham was late to work; on September 14, Beckingham did not go to work due to a sick child; she was late due to a flat tire on September 28; she left work early for unscheduled personal time on October 2, 2007; and she left early due to a sick child on October 3, 2007. On October 5, 2007, Beckingham received a written warning for accumulating 3½ occurrences in thirty (30) days. Thereafter, Beckingham did not go to work due to a sick child on November 28, 2007, December 4, December 27, and January 4, 2008. On January 9, 2008, Beckingham received a final written warning for 3 occurrences within 30 days and 8½ occurrences within 6 months. She was terminated for 14½ occurrences on January 30, 2008 after not going to work on January 27, 2008 due to a sick child.

Beckingham argues that Cenveo's attendance policy is unreasonable because it subjected her to discharge regardless of the reason for her absences. As was pointed out most recently by a panel of this Court in *Giovanoni v. Review Board of the Indiana Department of Workforce Development*, 900 N.E.2d 437 (2009), there is a split in this Court regarding the reasonableness of "no-fault" attendance policies. *Compare Love v. Heritage House Convalescent Center*, 463 N.E.2d 478 (Ind. Ct.App.1983) (holding that rule which subjects employee to discharge for excused, as well as unexcused absences, is *per se* unreasonable), *and Parkison v. James River Corporation*, 659 N.E.2d 690 (Ind.Ct.App. 1996) (holding that employer rule that subjects employees to termination for both excused and unexcused absences is unreasonable under Ind.Code § 22–4–15–1(d)(2)), *with Jeffboat, Inc. v. Review Board of Indiana Employment Security Division*, 464 N.E.2d 377 (Ind.Ct.App. 1984) (rejecting the broad dictum of *Love* and holding that attendance plan is not *per se* unreasonable because it allows some absences caused by illness to lead to discharge), *and Beene v. Review Board of the Indiana Department of Employment and Training Services*, 528 N.E.2d 842 (Ind.Ct. App.1988) (holding that employer's attendance policy, which permitted excused absences for illnesses to be counted toward total number of absences needed for discharge of employee, was not unreasonable). In *Giovanoni,* a panel of this Court followed the line of thinking set forth in *Love* and determined that the employer's attendance policy was unreasonable because it exposed employees to termination regardless of the reason for the employee's absence.

In *Jeffboat* and *Beene* it was determined that an employer's attendance plan is not *per se* unreasonable simply because it allows excused absences and/or absences caused by illness to be included toward the benchmark at which an employee has been excessively absent and will be discharged. In *Jeffboat,* the attendance program allowed an employee up to nine days of unverified personal absence per contract year without consequence. On the tenth through twelfth days of absence, a reprimand and suspension procedure was instituted, and the thirteenth day of absence resulted in discharge. In defining a day of absence, the program stated that two "out-of-gate" passes, issued for leaving work early, were the equivalent of one day of absence, and an employee's reason for absence was generally irrelevant. However, when an employee could verify an illness causing absence for three or more consecutive days, the absence became an "Illness Leave" and did not count toward the thirteen day personal absence limitation.

Cenveo's attendance policy in the present case is similar to that found in *Jeffboat.* Cenveo's policy provides that employees may incur up to 13 occurrences of excused absences and/or tardies over a 12–month period before being terminated for excessive absenteeism. In addition, Cenveo's policy provides that an excused absence which occurs over consecutive days will be counted as a single occurrence. In defining an occurrence, Cenveo's policy states that if an employee clocks in 1 hour or more late, it is counted as one occurrence. If an employee clocks in any time from 4 minutes up to 1 hour late, it is counted as ½ an occurrence. Cenveo Attendance Policy, Appellant's App. at 44–45.

Having examined the relevant caselaw, we believe that the reasoning set forth in *Jeffboat* and *Beene* is the better rationale for determining the reasonableness of an employer's attendance policy. *See Jeffboat,* 464 N.E.2d at 380; *see also Beene,* 528 N.E.2d at 846. Like Jeffboat's program, Cenveo's policy protected certain in-

terests of both the employer and the employees. For the employer, the policy protects against an employee who abuses the policy by being frequently "ill." In turn, the policy safeguards employees by providing some latitude for long-term illnesses and provides up to 13 occurrences before termination is sought, with graduated steps of disciplinary action as the occurrences increase in number. The Board's determination that Cenveo's attendance policy was reasonable was supported by substantial evidence.

■ Next, we examine Beckingham's claim that Cenveo's attendance policy is not uniformly enforced. "A uniformly enforced rule is one that is carried out in such a way that all persons under the same conditions and in the same circumstances are treated alike." *Stanrail Corp. v. Review Bd. of Dept. of Workforce Development*, 735 N.E.2d 1197, 1203 (Ind.Ct. App.2000), *trans. denied.* As presented in this case, the uniform enforcement inquiry is a question of basic fact. Accordingly, we review the Board's decision for substantial evidence. *See Quakenbush*, 891 N.E.2d at 1053.

Here, Beckingham's supervisor testified that once, maybe twice, she recorded only one occurrence, rather than two occurrences, against Beckingham when the occurrences were for the same continuing illness of one of Beckingham's children. Transcript of Hearing, Appellant's App. at 18–19. Beckingham argues that these actions by her supervisor led her to believe that a special modification or exception was being made for her situation. When asked about modifying Cenveo's attendance policy, Beckingham's supervisor testified that they do not modify the policy. Transcript of Hearing, Appellant's App. at 18. Additionally, although Beckingham alleged that her supervisor had missed more work time than she had, the supervisor

and a human resources employee both denied this allegation. Beckingham's supervisor further testified that, as a manager, she was able to take a longer lunch hour and make different arrangements. Moreover, she testified that she offered similar arrangements for Beckingham to use her lunch hour. The Board and the ALJ found the testimony of both the supervisor and the human resources employee credible, and we do not reconsider the credibility of witnesses in our review of the basic facts. *See id.* The Board's determination that the policy was uniformly enforced was supported by substantial evidence. Further, having determined that Cenveo's attendance policy was both reasonable and uniformly enforced, we therefore conclude that Beckingham was discharged for just cause pursuant to Ind.Code § 22–4–15–1(d)(2).

The second and final issue raised by Beckingham is whether her discharge should have been reviewed under Ind.Code § 22–4–15–1(d)(3) rather than Ind.Code § 22–4–15–1(d)(2). Ind.Code § 22–4–15–1(d) provides:

"Discharge for just cause" as used in this section is defined to include but not be limited to:

(1) separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge:

(2) **knowing violation of a reasonable and uniformly enforced rule of an employer;**

(3) **unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness;**

(4) damaging the employer's property through willful negligence;

(5) refusing to obey instructions;

(6) reporting to work under the influence of alcohol or drugs or consuming

alcohol or drugs on employer's premises during working hours;

(7) conduct endangering safety of self or coworkers; **or**

(8) incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction or for any breach of duty in connection with work which is reasonably owed an employer by an employee.

(Emphasis supplied). Beckingham asserts that her discharge should have been reviewed pursuant to Ind.Code § 22–4–15–l(d)(3), and, that had her discharge been so reviewed, she could have shown good cause for her absences because they were "excused" under Cenveo's policy. Therefore, she continues, she would have been entitled to unemployment compensation.

■ We may not interpret a statute that is clear and unambiguous on its face. *Schafer v. Sellersburg Town Council,* 714 N.E.2d 212, 215 (Ind.Ct.App.1999), *trans. denied.* Rather, the words of the statute are to be given their plain, ordinary and usual meaning. *Id.* Ind.Code § 22–4–15–1(d) is written in the disjunctive. Accordingly, discharge for just cause can be established under any of the eight subsections. This point was addressed in *Beene* when the same argument that Beckingham presents here was presented by Beene. A panel of this Court noted:

> The [ ] conclusion that Beene could be discharged and denied benefits for violating the Employer's uniformly enforced, reasonable attendance policy obviates the need to determine whether there was good cause for her poor attendance under IC 22–4–15–1(d)(3) as that statute lists several disjunctive definitions of just cause, any one of which would support the discharge and denial of benefits.

*Beene,* 528 N.E.2d at 846. In addition, in her dissenting opinion in *Giovanoni,* Judge

Brown stated that the statute, as it is now written, does not require attendance issues to be addressed under Ind.Code § 22–4–15–1(d)(3). Rather, the statute is written in the disjunctive such that we may analyze an attendance issue under section (d)(2) or section (d)(3). Moreover, Judge Brown noted that it is up to the legislature to change the wording of the statute if it determines that Section (d)(2) should not apply to attendance issues. *See Giovanoni,* 900 N.E.2d 437 (Brown, J., dissenting). Thus, the Board's determination that Beckingham was discharged for just cause pursuant to Ind.Code § 22–4–15–1(d)(2) is proper.

Based upon the foregoing discussion and authorities, we conclude that Beckingham was discharged for just cause under Ind. Code § 22–4–15–1(d)(2) and that, based upon the language of the statute, the attendance issue in this case was not required to be reviewed under Ind.Code § 22–4–15–1(d)(3).

Affirmed.

DARDEN, J., concurs.

NAJAM, J., dissents with separate opinion.

NAJAM, Judge, dissenting.

I respectfully dissent. The majority holds that "the reasoning set forth in *Jeffboat* and *Beene* is the better rationale for determining the reasonableness of an employer's attendance policy," and that Indiana Code Section 22–4–15–1(d) "is written in the disjunctive such that we may analyze an attendance issue under section (d)(2) or section (d)(3)." Op. at 482, 484. In *Jeffboat* and *Beene,* this court analyzed a claimant's entitlement to unemployment benefits under Section (d)(2), rather than Section (d)(3), even though those claimants were terminated for ab-

sence-related issues. *See Beene v. Review Bd. of Ind. Dep't of Employment & Training Servs.*, 528 N.E.2d 842 (Ind.Ct.App. 1988); *Jeffboat v. Review Bd. of Ind. Employment Sec. Div.*, 464 N.E.2d 377 (Ind. Ct.App.1984); *but see Love v. Heritage House Convalescent Ctr.*, 463 N.E.2d 478, 482 (Ind.Ct.App.1983) (holding that "[a] rule which subjects an employee to discharge for excused, as well as unexcused[,] absences[ ] is unreasonable" for purposes of Section (d)(2)). I cannot agree with the majority's holdings, and I vote to reverse the Review Board's determination of Beckingham's claim for benefits and remand with instructions that it consider her claim under Section (d)(3).

I would follow the reasoning of the majority opinion in *Giovanoni.* There, this court held as follows:

> Having examined the relevant case law, and mindful of the [Unemployment Compensation Act's] purpose to provide benefits to individuals who are unemployed *through no fault of their own,* we believe that *Love,* rather than *Jeffboat,* provides the sounder model for determining eligibility for unemployment benefits when an employee is discharged for attendance issues. Under *Love,* an attendance rule that subjects an employee to discharge for excused as well as unexcused absences is per se unreasonable, but an employee who is discharged for problem attendance will be disqualified

from unemployment benefits if the employee cannot show good cause. We believe that *Love* protects the employee from a denial of benefits where good cause exists for absences and tardiness, yet does not restrict the employer's right to terminate an employee who violates its attendance rule. In contrast, *Jeffboat* and *Beene* expose an employee to disqualification and a denial of benefits even where the employee is absent or tardy with good cause and suffers termination through no fault of his own. We think that the risk of inconsistent results will be reduced if discharges due to unsatisfactory attendance, whether or not pursuant to an attendance rule, are analyzed under Section (d)(3) as was done in *Love.* Thus, we agree with Judge Mathias that termination for unsatisfactory attendance must be analyzed solely under Section (d)(3).[1]

*Giovanoni v. Review Bd. of Ind. Dep't of Workforce Dev.*, 900 N.E.2d 437, 443–44 (Ind.Ct.App.2009) (emphasis original); *see also* Ind.Code § 22–4–1–1 (stating that the purpose of the Unemployment Compensation Act is to "provide for payment of benefits to persons unemployed *through no fault of their own* ") (emphasis added).

In contrast to *Giovanoni,* the majority here applies the holdings of *Jeffboat* and *Beene.* In doing so, the majority asserts that following those holdings will "protect[ ] [an employer] against an employee

---

1. Judge Mathias expressed this viewpoint in two separate cases of similar names. *See Stanrail Corp. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 735 N.E.2d 1197, 1206–07 (Ind.Ct.App.2000) (Mathias, J., concurring in result), *trans. denied; Stanrail Corp. v. Unemployment Ins. Review Bd.*, 734 N.E.2d 1102, 1106–07 (Ind.Ct.App.2000) (Mathias, J., concurring), *trans. denied* ("*Stanrail I* "). I also concurred in *Stanrail I,* albeit not separately, and I note that we expressly did not address the conflict between *Jeffboat* and *Love* in that case. *Stanrail I,* 734 N.E.2d at 1105–06

("Even assuming the parties are correct with respect to the conflicting nature of the holdings in *Jeffboat* and *Love,* we must decline the invitation to resolve that conflict."). Instead, we held that the Review Board erred for basing its decision on employment policies unrelated to the stated reason for termination and for disregarding the facts found by the ALJ. *Id.* at 1106 ("In this case, the Board erred in going beyond the stated reason for discharge and taking the opportunity to review all facets of Stanrail's employment policies.").

who abuses the policy by being frequently ill." Op. at 483 (quotations omitted). But unemployment benefits do not strip an employer of its right to terminate an employment relationship on the basis of absenteeism. Rather, they merely provide terminated employees with relief in the event that their absenteeism is "through no fault of their own." Ind.Code § 22–4–1–1; *see also* Ind.Code § 22–4–15–1(d)(3) (stating that employees terminated for absenteeism are entitled to unemployment benefits if that absenteeism is for "good cause").

The majority also holds that Indiana Code Section 22–4–15–1(d) "is written in the disjunctive," and, accordingly, this court must apply Section (d)(2) to give effect to the statute's plain meaning. *See* op. at 483–84; *see also Giovanoni*, 900 N.E.2d at 445 (Brown, J., dissenting) (noting that it is up to the General Assembly to change the wording of the statute if Section (d)(2) is not intended to apply to attendance issues). Undoubtedly, an unambiguous statute must be given its plain meaning. But applying Section (d)(2), which applies only generally to "enforced rule[s] of an employer," to attendance issues nullifies Section (d)(3), which applies specifically to "unsatisfactory attendance." In interpreting a statute, we must "strive to avoid a construction that renders any part of the statute meaningless or superfluous." *Vanderburgh County Election Bd. v. Vanderburgh County Democratic Cent. Comm.*, 833 N.E.2d 508, 511 (Ind.Ct. App.2005). The majority's construction of Indiana Code Section 22–4–15–1(d) renders Section (d)(3) both meaningless and superfluous to Section (d)(2).

Finally, the General Assembly, in drafting Indiana Code Section 22–4–15–1(d), must have been aware of the likelihood that the "enforced rule[s] of an employer" would generally include rules on attendance. *See* Ind.Code § 22–4–15–1(d)(2). Yet the General Assembly still included a specific provision pertaining to "unsatisfactory attendance." Ind.Code § 22–4–15–1(d)(3). Another rule of statutory construction "directs that a more specific statute will supersede a more general one." *State v. Downey*, 770 N.E.2d 794, 797 (Ind. 2002). Here, application of that rule of statutory construction requires that Beckingham's claim for benefits be analyzed under the more specific provision of Section (d)(3) rather than under the more general provision, Section (d)(2).

The ALJ and the Review Board here only considered Beckingham's claim in light of Section (d)(2). Because the only issue is whether Beckingham is entitled to unemployment benefits in light of her absenteeism, I would hold, in accordance with *Giovanoni* and our rules of statutory construction, that the ALJ and the Review Board erred as a matter of law by not considering her claim under Section (d)(3). As such, I vote to reverse the Review Board's decision and remand for consideration of Beckingham's claim in light of Section (d)(3).