John D. GIOVANONI II, Appellant,

v.

REVIEW BOARD OF THE INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and Clarian Health Partners, Inc., Appellees.

No. 93A02–0806–EX–545.

Court of Appeals of Indiana.

Jan. 29, 2009.

Rehearing Denied March 27, 2009.

Delmar P. Kuchaes II, Bargersville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee Review Board of the Indiana Department of Workforce Development.

## OPINION

CRONE, Judge.

### Case Summary

John D. Giovanoni II appeals the decision of the Unemployment Insurance Review Board of the Indiana Department of Workforce Development ("the Board") denying his application for unemployment benefits. We reverse.

### Issue

Giovanoni raises one issue on appeal, which we restate as follows: whether he was discharged for just cause.

### Facts and Procedural History

Clarian Health Partners, Inc. ("Clarian"), discharged Giovanoni, a pharmacy technician, after he accumulated eight absences in violation of its no-fault attendance policy. In deciding that Giovanoni was discharged for just cause and there-

fore ineligible for unemployment benefits, the Board adopted and affirmed the following order of the Administrative Law Judge ("ALJ"), which was issued after an evidentiary hearing:

*FINDINGS OF FACT:* The employer operation in question is the in-patient pharmacy at Riley Hospital for Children. [Giovanoni] worked for [Clarian] from 11/15/06 through 12/26/07 as a pharmacy technician. [Clarian] discharged [Giovanoni] for a violation of its written attendance policy, a copy of which is given to all employees of [Clarian], including [Giovanoni], and the provisions of which are applicable to all employees of [Clarian]. [Clarian] enforces this policy uniformly with regard to all employees. This is a no-fault policy. The policy is essential to [Clarian] as attendance is critical as patients need to be able to receive their medications when necessary.

[Giovanoni] began to experience a severe medical situation, seizures with complicated migraines. The initial medications given to [Giovanoni] were not working, and he was often not able to function and come to work as he desired. He would try to come to work as much as possible, even when his medical condition was such that he really could not do his job, but he knew what the attendance system was, and he did not wish to lose his job.

[Clarian's] policy provides for progressive discipline, with four levels, Level I being 5 occurrences, Level II being 6 occurrences, Level III being 7 occurrences, and the fourth level being termination at 8 occurrences. This policy provides for a rolling 12–month period, so that any warning would be removed after having been on the employee's record for one year. [Giovanoni] received his first written warning on 5/23/07. [Giovanoni] received a second written warning on 5/31/07. [Giovanoni] then received a third written warning on [7/11/07], which indicated that one additional occurrence would result in termination. [Clarian] discussed the warnings with [Giovanoni] at each stage. At the time of the third written warning, [Clarian's] pharmacy manager discussed [Giovanoni's] situation with him. She was very concerned that he was not going to be able to maintain attendance, would incur an additional occurrence, and become discharged. [Giovanoni] had not been eligible to meet FMLA requirements, but could have been eligible after one year of employment. [Giovanoni] indicated that he believed that he could make it through; however, he then had an occurrence on 12/16/07. [Clarian] does payroll every two weeks, and [Clarian's] pharmacy technician supervisor discovered that [Giovanoni] had an occurrence subsequent to his third written warning. As she did not have authority to issue the termination, she waited until the pharmacy manager returned from vacation, and [Clarian] then discharged [Giovanoni] under its attendance policy, by notice dated 12/26/07.

*CONCLUSIONS OF LAW:* According to IC 22–4–15–1(d): "Discharge for just cause [a]s used in this section is defined to include but not be limited to: ... (2) knowing violation of a reasonable and uniformly enforced rule of an employer." The burden of establishing that the discharge of the employee is for just cause is upon the employer. The burden is upon the employer to establish a prima facie showing [of] just cause for [termination].

In the present case, [Clarian] discharged [Giovanoni] for a violation of its written attendance policy, a no-fault policy, a copy of which is given to all employees of [Clarian], including [Giovanoni], and

the provisions of which are applicable to all employees of [Clarian]. [Clarian] uniformly enforces the provisions of this policy with regard to all employees. The policy provides for a progressive disciplinary procedure in four stages. [Giovanoni] received the first written warning dated 5/23/07, a second written warning dated 5/31/07, and a third written warning dated [7/11/07]. [Clarian] counseled [Giovanoni] at each stage of the progressive disciplinary action. At the time [Clarian] gave [Giovanoni] the third written warning, he was informed that his job was in jeopardy if he had one more occurrence. [Giovanoni] had not been eligible for FMLA. In addition, [Clarian's] policy provides for a rolling 12–month period of coverage. [Clarian's] pharmacy manager discussed possible options with [Giovanoni]; however, he believed that he could make it through and remain in his job. [Giovanoni] then had an attendance incident on 12/16/07. When [Clarian] did its payroll check, and [Clarian's] pharmacy manager returned from vacation, [Giovanoni] was discharged by written notice dated 12/26/07. Attendance is essential in [Clarian's] operation, as it is the in-patient pharmacy for a hospital.

[Giovanoni] began experiencing a severe medical condition, and was being treated by various doctors. [Giovanoni] was aware of [Clarian's] policy, and that his job was in jeopardy, and he tried his best to remain within the parameters of the policy to retain his employment. However, [Giovanoni] then had the subsequent attendance occurrence after the issuance of this third written warning, and was discharged by [Clarian]. Under these circumstances, the Administrative Law Judge finds that the discharge was for violation of a known, reasonable, and uniformly enforced poli-

cy, and that it was therefore for just cause under Indiana unemployment law.

**DECISION:** The initial determination of the deputy is reversed. [Giovanoni] was discharged for just cause.

Appellant's App. at 5–6 (citations omitted). Giovanoni appeals.

## Discussion and Decision

 Giovanoni challenges the Board's conclusion that he was discharged for just cause. As such, we are called upon to review only the Board's conclusions of law, which we do under a de novo standard. *See Penny v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 852 N.E.2d 954, 957 (Ind.Ct.App.2006), *trans. denied* (2007).

 Giovanoni's claim is governed by the Unemployment Compensation Act ("UCA"), Indiana Code Article 22–4, which was enacted to "provide for payment of benefits to persons unemployed *through no fault of their own.*" Ind.Code § 22–4–1–1 (emphasis added). Under the UCA, an individual who meets the requirements of Indiana Code Chapter 22–4–14 *and* is not disqualified by the exceptions in Chapter 22–4–15 is eligible for benefits. An individual is disqualified for unemployment benefits if he is discharged for just cause. Ind.Code § 22–4–15–1. The employer bears the burden to prove that it discharged the employee for just cause. *Hehr v. Review Bd. of the Ind. Employment Sec. Div.*, 534 N.E.2d 1122, 1124 (Ind.Ct.App.1989). "Discharge for just cause" includes but is not limited to:

(1) separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge;

(2) knowing violation of a reasonable and uniformly enforced rule of an employer;

(3) unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness;

(4) damaging the employer's property through willful negligence;

(5) refusing to obey instructions;

(6) reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours;

(7) conduct endangering safety of self or coworkers; *or*

(8) incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction or for any breach of duty in connection with work which is reasonably owed an employer by an employee.

Ind.Code § 22–4–15–1(d) (emphasis added). Here, the Board denied Giovanoni's application for benefits based on Indiana Code Section 22–4–15–1(d)(2) ("Section (d)(2)"). To establish a prima facie case of a rule violation under Section (d)(2), the employer must show that the employee (1) knowingly violated (2) a reasonable and (3) uniformly enforced rule. *Stanrail Corp. v. Review Bd. of the Dep't of Workforce Dev.*, 735 N.E.2d 1197, 1203 (Ind.Ct.App.2000) ("*Stanrail II* "), *trans. denied* (2001).

We observe that this Court is split regarding reasonableness as it pertains to a no-fault attendance rule. *Compare Jeffboat, Inc. v. Review Bd. of Ind. Employment Sec. Div.*, 464 N.E.2d 377, 380 (Ind. Ct.App.1984) (holding that attendance rule is not per se unreasonable because some absences caused by illness could result in termination) *with Love v. Heritage House Convalescent Ctr.*, 463 N.E.2d 478, 482 (Ind.Ct.App.1983) (holding that rule that subjects employee to discharge for excused, as well as unexcused absences, is per se unreasonable). We further observe that Indiana Code Section 22–4–15–1(d)(3) ("Section (d)(3)") provides that discharge

for just cause includes "unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness." It is been suggested that "discharge issues concerning employee attendance rules are to be reviewed exclusively under [Section (d)(3) ]." *Stanrail Corp. v. Unemployment Ins. Review Bd.*, 734 N.E.2d 1102, 1106–07 (Ind.Ct.App.2000) ("*Stanrail I* ") (Mathias, J., concurring), *trans. denied* (2001). Additionally, Giovanoni argues that he is exempted from disqualification by Indiana Code Section 22–4–15–1(c)(2) ("Section (c)(2)"), which provides, "An individual whose unemployment is the result of medically substantiated physical disability and who is involuntarily unemployed after having made reasonable efforts to maintain the employment relationship shall not be subject to disqualification under this section for such separation." Thus, this case provides us with an opportunity to clarify how an employee's eligibility for unemployment benefits should be determined when, as here, the employee is discharged for attendance issues.

We first review the relevant case law. In *Love*, the employee worked as a nursing assistant in an intermediate care unit. The employer had an attendance policy providing that six absences in any six-month period resulted in a counseling report, after which the employee would be terminated for any additional unexcused absence or, at the discretion of the employee's supervisor, for any additional absence, regardless of the reason. In addition, more than ten instances of tardiness in a twelve-month period could be cause for termination. From September 9, 1980, until April 6, 1981, the day of discharge, Love was absent from work twenty times due to her own or a close family member's illness. She was also absent once due to excessive snow, which was excused. Further, Love was tardy thirteen days due to the road

conditions from her residence to the employer's facility. Her route to work required her to travel on a gravel road and on township roads. Due to her absences and tardiness, she was in violation of the employer's attendance policy and was therefore discharged.

In assessing Love's eligibility for unemployment benefits, the Board observed, "An employer's rule which subjects an employee to discharge for absences without regard to the reason for those absences is not a 'reasonable rule' for purposes of disqualification from unemployment benefits[.]" 463 N.E.2d at 480. Nevertheless, the Board noted that "unsatisfactory attendance constitutes just cause for discharge, if the individual cannot show good cause for the absence or tardiness." *Id.* The Board concluded that all of Love's absences were for good cause. However, it went on to conclude that general road conditions did not constitute good cause for chronic tardiness and that Love was therefore discharged for just cause.

On appeal, Love argued, inter alia, that the Board's decision was contrary to law. The *Love* court upheld the Board's conclusion that the claimant's unexcused tardiness constituted just cause for her discharge. *Id.* at 482. In so doing, the *Love* court nonetheless concurred with the Board's observation that, "A rule which subjects an employee to discharge for excused, as well as unexcused absences, is unreasonable under [Section (d)(2) ]. Given the history and purpose of our law, the violations of such a rule may not disqualify an employee from unemployment compensation if the absences are excused." *Id.*

Shortly after *Love,* this Court reached a different conclusion as to the reasonableness of a no-fault attendance policy in *Jeffboat.* There, the attendance policy permitted the employee nine days of personal absence per contract year. However, on

the tenth through twelfth days of absence, the employee was reprimanded and suspended, and on the thirteenth day, the employee was terminated. Under the plan, two instances of early departure from work constituted one absence. The employee's reason for absence was generally irrelevant, except that if an employee verified an illness causing absence for three or more consecutive days, the absence was considered an illness leave and did not count toward the thirteen-day personal absence limitation.

Wolfe, the employee, was discharged for being absent thirteen days: eight days of absence (six for illness), and ten early departures treated as five days of absence. Contrary to *Love,* the *Jeffboat* court concluded that because Indiana Code Section 22–4–15–1(d) is written in the disjunctive,

it was reasonable to conclude that Wolfe can be discharged for "just cause" because he knowingly violated a reasonable and uniformly enforced rule of an employer dealing with absenteeism, despite the existence of "good cause", or illness, for some of the unsatisfactory attendance.... Having decided that absences partially caused by illness may lead to discharge for just cause so long as they are incorporated into a reasonable and uniformly enforced plan, we need only address whether the [attendance policy] was reasonable and whether it was knowingly violated and uniformly enforced.

464 N.E.2d at 380. The court then concluded that

Jeffboat's Program is reasonable because it protects the interests of the employer by providing protection from an employee who abuses the Program, e.g., one who is consistently "ill" one day a week (sometimes referred to as a malingerer). Further, the Program protects the employee's interests by disre-

garding legitimate long-term illnesses of three or more consecutive days. This is in sharp contrast to the company rule to which Love was subjected, a rule that simply provided that more than six days of absence in a six-month period, regardless of the reason, leads to termination.

*Id.*

Judge Sullivan, the author of *Love,* dissented. While he "fully agree[d] with the majority that Jeffboat's absentee policy rule is enlightened and is liberally weighed in favor of the average employee[,]" he concluded, "The fact remains, however, that the rule is not a sufficient basis upon which to deny unemployment benefits to an employee terminated *through no fault of his own."* *Id.* at 382 (Sullivan, J., dissenting) (emphasis added).

Another panel of this Court followed *Jeffboat* in *Beene v. Review Board of Indiana Department of Employment and Training Services,* 528 N.E.2d 842 (Ind.Ct. App.1988). Beene was a customer service representative employed at Heritage Cablevision from July 25, 1983, through March 26, 1987. Heritage's attendance policy provided for termination if an employee was absent six times in a six-month period. Beene was discharged after she had accumulated six counted absences and seven incidents of tardiness in a six-month period. The evidence showed that all her absences were due to her or her children's illness. Also, six instances of tardiness were due to car problems, three were due to her children's illness, and on one occasion she had to take her husband to the emergency room. The court held that the no-fault attendance policy was reasonable and that Beene was discharged for just cause. The court specifically rejected Beene's argument that she was not disqualified because she had "good cause" under Section (d)(3), stating,

The above conclusion that Beene could be discharged and denied benefits for violating the Employer's uniformly enforced, reasonable attendance policy obviates the need to determine whether there was good cause for her poor attendance under IC 22–4–15–1(d)(3) as that statute lists several disjunctive definitions of just cause, any one of which would support the discharge and denial of benefits.

*Id.* at 846.

Later, in *Parkison v. James River Corp.,* 659 N.E.2d 690, 693 (Ind.Ct.App. 1996), this Court summarily relied on *Love* and held that the employer's attendance policy, which subjected its employees to termination for both excused and unexcused absences, was unreasonable.

Most recently, the issue has arisen in *Stanrail I* and *II.* In *Stanrail I,* employee Pierce was discharged because he exceeded the maximum number of de merit points permitted under Stanrail's attendance program. The ALJ found that Pierce was discharged for just cause under Section (d)(3). The Board found that Stanrail's policy was unreasonable and reversed the decision of the ALT. On appeal, Pierce argued that *Love* compelled a decision in his favor, whereas Stanrail asserted that *Jeffboat* controlled. The court declined the parties' invitation to resolve the conflict between *Love* and *Jeffboat,* and instead concluded that the Board erred in extending its inquiry outside the employer's stated reason for the employee's discharge and "taking the opportunity to review all facets of Stanrail's employment policies." 734 N.E.2d at 1106. In his concurring opinion, Judge Mathias observed,

Counsel ably pointed out the conflict between this Court's previous analyses in [*Jeffboat]* and [*Love* ]. However, counsel, the Board and this Court have, as of

yet, failed to address the source of this recurring, apparent conflict: the merger of "just cause" reviews of I.C. 22–4–15–1(d)(2) rules and I.C. 22–4–15–1(d)(3) rules. "No fault" discipline policies tend to erase the distinction between these two subsections, which are written in the disjunctive, causing confused results. Until "no fault" absenteeism policies under I.C. 22–4–15–1(d)(3) are reviewed for reasonableness under *Love,* independent of non-absenteeism rules under I.C. 22–4–15–1–(d)(2), the artificial conflict between the *Jeffboat* and *Love* results will persist.

*Id.* at 1106–07 (Mathias, J., concurring).

In *Stanrail II,* employee Lemley was discharged for exceeding the maximum amount of de merit points permitted under Stanrail's de merit program. Under the program, employees received de merits for safety violations, tardiness, failing to punch their time cards in or out, damage to equipment, unexcused absences, and failure to report an absence. The court again declined to examine the conflict between *Love* and *Jeffboat,* but nevertheless remarked:

> We agree with the point raised in [*Love*], that an attendance policy may permit an employer to discharge an employee under the policy without regard to whether the absence is excused or unexcused, while at the same time not disqualifying that employee from obtaining unemployment benefits under Indiana Code section 22–4–15–1(d)(3) because the employee provided "good cause" for the absence. However, while the disqualifying factors in subsection d are disjunctive and the employer need only show one of the eight, Stanrail does not support its position under (d)(3), but rather relies on (d)(2). Perhaps it is because its policy is not a "true" attendance policy. Theirs is a de merit pro-

gram which includes the assessment of points for conduct other than those related to absences and tardies (such as failure to wear safety glasses, horseplay, etc.). Thus, we express no opinion as to whether an employer can rely on (d)(3) rather than (d)(2) where all the points accumulated relate to attendance.

735 N.E.2d at 1202, n. 4. In his concurring opinion, Judge Mathias reiterated the position he had taken in *Stanrail I:*

> I remain convinced that, notwithstanding "no fault" attendance policies, "just cause" discharge issues concerning employee attendance rules are to be reviewed exclusively under Indiana Code § 22–4–15–1(d)(3). As the statute is written in the disjunctive, such review should be completely separate from discharge issues concerning the alleged knowing violation of a reasonable and uniformly enforced work rule under Indiana Code § 22–4–15–1(d)(2).

*Id.* at 1206–07 (Mathias, J., concurring) (citations omitted).

Having examined the relevant case law, and mindful of the UCA's purpose to provide benefits to individuals who are unemployed *through no fault of their own,* we believe that *Love,* rather than *Jeffboat,* provides the sounder model for determining eligibility for unemployment benefits when an employee is discharged for attendance issues. Under *Love,* an attendance rule that subjects an employee to discharge for excused as well as unexcused absences is per se unreasonable, but an employee who is discharged for problem attendance will be disqualified from unemployment benefits if the employee cannot show good cause. We believe that *Love* protects the employee from a denial of benefits where good cause exists for absences and tardiness, yet does not restrict the employer's right to terminate an employee who violates its attendance rule.

In contrast, *Jeffboat* and *Beene* expose an employee to disqualification and a denial of benefits even where the employee is absent or tardy with good cause and suffers termination through no fault of his own. We think that the risk of inconsistent results will be reduced if discharges due to unsatisfactory attendance, whether or not pursuant to a attendance rule, are analyzed under to Section (d)(3) as was done in *Love*. Thus, we agree with Judge Mathias that termination for unsatisfactory attendance must be analyzed solely under Section (d)(3).

Having determined that an attendance policy that subjects employees to termination for absences and tardiness regardless of the reason is unreasonable for purposes of Section (d)(2) and that all discharges for absences and tardiness must be examined under Section (d)(3), we now turn to the case at bar. Here, Clarian's attendance policy exposed an employee to termination regardless of the reason for the employee's absence. As such, it is unreasonable for purposes of Section (d)(2). Because Giovanoni was discharged for unsatisfactory attendance, we must determine whether Giovanoni has established good cause for his absences under Section (d)(3).

The Board found that Giovanoni experienced a severe medical situation with seizures and complicated migraines and that the initial medications he was prescribed were ineffective. Giovanoni's first attendance warning identifies seven absences and indicates that he was "undergoing medical treatment during this period." Appellee's App. at 42. Giovanoni received a second warning on May 31, 2007, and a third warning on July 11, 2007. The evidence admitted at the ALJ hearing shows that during this time, Giovanoni had multiple doctor and hospital visits, including emergency department visits, neurologist consultations, a CAT scan, an MRI, metabolic paneling, hepatic function tests, a hemogram, and an electroencephalogram. *Id.* at 48–65. He was diagnosed with a "fairly large" arachnoid cyst in his brain.[1] *Id.* at 65. Five months later, on December 16, 2007, Giovanoni was absent once more, apparently due to road conditions caused by severe winter weather. *Id.* at 67. We observe that hazardous road conditions due to severe weather are distinguishable from the generally difficult road conditions that Love was required to travel every day. Under these circumstances, we conclude that Giovanoni established good cause for his absences and tardiness. Accordingly, Giovanoni was not discharged for just cause, and therefore we reverse the Board's decision.[2]

Reversed.

ROBB, J., concurs.

BROWN, J., dissents with separate opinion.

---

1. "Arachnoid cysts are cerebrospinal fluid-filled sacs that are located between the brain or spinal cord and the arachnoid membrane, one of the three membranes that cover the brain and spinal cord" The National Institute of Neurological Disorders and Stroke, http://www.ninds.nih.gov/disorders/arachnoid_cysts/arachnoid_cysts.htm. Typical symptoms of an arachnoid cyst around the brain include headache, nausea and vomiting, seizures, hearing and visual disturbances, vertigo, and difficulties with balance and walking. *Id.*

2. We observe that even if we were to follow *Jeffboat* and *Beene*, we would conclude that Clarian's attendance policy is unreasonable for purposes of Section (d)(2) because it does not provide any time off for unscheduled absences due to legitimate illness. Alternatively, even if we were to find Clarian's attendance policy reasonable under *Jeffboat*, given the circumstances present in this case, Section (c)(2) would exempt Giovanoni from disqualification.

BROWN, Judge dissenting.

I respectfully dissent from the majority's interpretation of the unemployment compensation statutes and its conclusion that Giovanoni is entitled to unemployment benefits.

"To be eligible for unemployment benefits, an individual must meet the requirements set forth in Ind.Code ch. 22–4–14–1 and must not be disqualified by any of the various exceptions provided in ch. 22–4–15–1." *IN. State University v. LaFief,* 888 N.E.2d 184, 186 (Ind.2008). The portions of Ind.Code § 22–4–15–1 at issue here follow:

> (c) The disqualifications provided in this section shall be subject to the following modifications:
>
> \* \* \* \* \* \*
>
> (2) An individual whose unemployment is the result of medically substantiated physical disability and who is involuntarily unemployed after having made reasonable efforts to maintain the employment relationship shall not be subject to disqualification under this section for such separation.
>
> \* \* \* \* \* \*
>
> (d) "Discharge for just cause" as used in this section is defined to include but not be limited to:
>
> \* \* \* \* \* \*
>
> (2) knowing violation of a reasonable and uniformly enforced rule of an employer; [or]
>
> (3) unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness;

The Board determined that Giovanoni was not entitled to benefits because he violated a reasonable and uniformly enforced attendance rule of his employer. *See* I.C. § 22–4–15–1(d)(2). Although Giovanoni concedes this point, the majority holds that discharges due to unsatisfactory attendance should be analyzed under Section (d)(3) rather than Section (d)(2). This court noted in *Jeffboat* that "statutory words, phrases, and punctuation should be given their plain, ordinary, and usual meaning by construing the statute as a whole" and that "[w]hen the language used in the statute is clear and unambiguous and the intent of the legislature is unmistakable, we must adopt the meaning plainly expressed." *Jeffboat,* 464 N.E.2d at 379. The statute at issue "lists several disjunctive definitions of just cause, any one of which would support the discharge and denial of benefits." *Beene,* 528 N.E.2d at 846.

It is up to the legislature to change the wording of the statute if it determines it appropriate to clarify that Section (d)(2) does not apply to attendance issues. It would have been a simple matter for the legislature to make an exception in Section (d)(2) for a "knowing violation of a reasonable and uniformly enforced rule of an employer, *except as to a rule regarding attendance issues, dealt with in (3) herein.*" Having failed to do so, we must apply the clear language of the statute, written in the disjunctive, under which we may analyze the issue under Section (d)(2), and we are not required to analyze it under Section (d)(3). Under Section (d)(2), Giovanoni has conceded that he knowingly violated a reasonable and uniformly enforced attendance policy. Reply Brief at 5.

Despite Giovanoni's concession, he argues that he was not disqualified from receiving benefits because his unemployment is the result of a medically substantiated physical disability. *See* Ind.Code § 22–4–15–1(c)(2). In a footnote, the majority holds that "Section (c)(2) would ex-

empt Giovanoni from disqualification." Op. at 444 n. 2. However, the eighth absence, the one that resulted in his termination, was not substantiated as being caused by his medical condition. Although he clearly has a serious medical condition, I do not believe that he presented evidence of a "medically substantiated physical disability" or that he sufficiently demonstrated having made "reasonable efforts to maintain the employment relationship." I.C. § 22–4–15–1(c)(2). The evidence was clear that he was aware after his third warning that any subsequent absences would result in termination. A Clarian witness testified that she specifically talked to him about his absences after he received his warnings and offered to help him find another job because she was worried he was going to be terminated. He declined her help. Giovanoni's final absence was on December 16, 2007, and to explain his absence, he presented only an online weather report indicating a winter storm warning for that day as well as an invoice from Big O Tires dated January 17, 2008. None of the medical reports, prescription explanations, test results, billings, or explanation of benefits he submitted relate to December 16, 2007. Thus, I conclude that Giovanoni failed to demonstrate that Section (c)(2) exempted him from disqualification, and I would affirm the Board's decision that he was discharged for just cause.

For these reasons, I respectfully dissent.